# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | PROMESA Title III<br><br>Case No. 17-BK-4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as a representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Plaintiff,[2] | Adv. Proc. No. 19-00391-LTS<br><br>PROMESA Title III |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2]  The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") served as co-plaintiff/trustee in the prosecution of this adversary proceeding pursuant to that certain *Stipulation and Agreed Order by and Among the*

v.

U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE,

     Defendant.

## FIRST AMENDED COMPLAINT OBJECTING
## TO DEFENDANT'S CLAIMS AND SEEKING RELATED RELIEF

The Puerto Rico Electric Power Authority ("PREPA" or the "Debtor"), by and through the

Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or

"Plaintiff"), as the Debtor's sole representative pursuant to section 315(b) of the *Puerto Rico*

*Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] brings this first amended

complaint (the "Amended Complaint") against U.S. Bank National Association ("Trustee" or

"Defendant"), as fiscal agent for bonds issued by PREPA ("PREPA Bonds") pursuant to the trust

agreement between PREPA and Defendant, dated as of January 1, 1974, as amended and

supplemented.

## NATURE OF ACTION

1.    Plaintiff brings this Amended Complaint objecting to (a) the secured claims

asserted by Defendant in PREPA's assets, and (b) all unsecured claims of Defendant, including as

a result of the disallowance of Defendant's secured claims.

2.    PREPA issued several series of the PREPA Bonds pursuant to a Trust Agreement

between PREPA and Defendant, dated as of January 1, 1974, as amended and supplemented (the

---

*Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority Related to Joint Prosecution
of Lien Challenge* [Case No. 17- BK-4780-LTS, ECF No. 1405] (the "Stipulation"). The Oversight Board exercised
its authority to terminate the Stipulation by notice to AAFAF's counsel. As such, the Oversight Board files this
Complaint as sole plaintiff.

[3]  PROMESA has been codified at 48 U.S.C. §§ 2101–2241.

"Trust Agreement").[4]  The Trust Agreement provides the PREPA Bonds are only payable from "Revenues" deposited into certain deposit accounts which comprise the "Sinking Fund" and "Subordinate Funds" (both as further defined below).  Both the Trust Agreement and bonds confirm they are non-recourse against PREPA.

3.      Defendant filed a proof of claim in the PREPA Title III case in the amount of $8,477,156,729.56 (plus any amounts accruing post-petition) asserting, among other things, the PREPA Bonds are secured by: (i) all moneys and investments held by PREPA including moneys held or required to be held in trust for the benefit of holders of PREPA Bonds; (ii) present and future revenues of PREPA; and (iii) certain covenants, obligations and undertakings of PREPA.

4.      However, under the Trust Agreement, the grant of the security interest to Defendant is expressly limited to funds deposited to the credit of the deposit accounts which comprise the "Sinking Fund" and certain other "Subordinate Funds" (both as defined below).  Trust Agreement § 507.  The Subordinate Funds include, among other funds, the Self-Insurance Fund.  The Trust Agreement does not grant the Trustee a security interest in any of (i) the "Revenues" (which is defined by the Trust Agreement to mean "all moneys received by PREPA in connection with or as a result of its ownership or operation of the System") or other moneys not deposited into the Sinking Fund or Subordinate Funds; (ii) PREPA's right to receive revenues in the future; or (iii) other PREPA property.

5.      The deposit accounts that constitute the Sinking Fund and the Self-Insurance Fund are held by the Trustee.  The Trustee did not perfect a security interest in deposit accounts that are not held by the Trustee.  Nor does the Trustee have "control" (within the meaning of governing law) of any of the deposit accounts where the moneys received by PREPA are deposited because

---

[4] A copy of the Trust Agreement, with all its amendments, is attached hereto as **Exhibit A**.

3

the Trustee does not have a deposit account control agreement ("DACA") with any of PREPA's depositary banks and, therefore, does not have the requisite control (within the meaning of governing law) to perfect a security interest in any deposit account maintained with any such bank. No Revenues, except for the moneys currently held in the Sinking Fund or Self-Insurance Fund, are subject to a perfected security interest, and the Master PREPA Bond Claim should be disallowed to the extent it asserts a perfected security interest in anything other than the Sinking Fund and Self-Insurance Fund.

6.      Defendant also does not hold a security interest in PREPA's covenants and the remedies set forth in the Trust Agreement. PREPA's obligations under the covenants and remedies in which the Trustee claims a security interest are not assets of PREPA. They are contractual obligations of PREPA, whose sole purpose is to support the payment of bonds. PREPA did not and could not grant a security interest in them. Even if such covenants and remedies could be considered property of PREPA (they are not) and such property was made subject to a security interest by the Trust Agreement (it was not), the Trustee failed to perfect a security interest therein. Covenants and remedies are not identified in any UCC-1 financing statements filed by the Trustee. The Master PREPA Bond Claim should be disallowed to the extent it asserts a security interest in the covenant and remedies.

7.      Pursuant to the Trust Agreement, the holders of PREPA Bonds disavowed any recourse claim against PREPA. In the Trust Agreement, Defendant agreed the PREPA Bonds would be "payable solely" from the Revenues actually pledged to pay the PREPA Bonds—that is, the PREPA Bonds are "payable solely" from the moneys deposited into the Sinking Fund and Subordinate Funds. The Trust Agreement and the bonds themselves specify in several places that the bondholders' only recourse is to the Sinking Fund and Subordinate Funds. Moreover,

4

Defendant cannot circumvent the non-recourse nature of the PREPA Bonds by claiming PREPA breached its covenants under the Trust Agreement: any damages for breach of those covenants is subject to the same limits on recourse that exist in the PREPA Bonds themselves.  Defendant perfected a security interest only in the Sinking Fund and Self-Insurance Fund.  As a result, any claim by Defendant is recourse only to the Sinking Fund and Self-Insurance Fund.  Additionally, Defendant has consistently admitted its claim is payable solely from "special revenues" as that term is defined in Bankruptcy Code section 902(2).[5]  Due to the operation of Bankruptcy Code section 927, a "claim payable solely from special revenues . . . shall not be treated as having recourse against the debtor . . . pursuant to section 1111(b)."

8.      Plaintiff seeks a judgment disallowing the Master PREPA Bond Claim except as to a secured claim against the Sinking Fund and Self-Insurance Fund.[6]

## PARTIES

9.      Plaintiff PREPA is a public corporation established by the Commonwealth of Puerto Rico by Act No. 83-1941, codified at 22 L.P.R.A. §§ 191–240 (as amended, the "Authority Act").[7]  PREPA supplies substantially all the electricity consumed in the Commonwealth.  PREPA

---

[5]   All sections of the Bankruptcy Code referenced in this Amended Complaint are made applicable to this proceeding pursuant to PROMESA section 301(a).

[6]   Plaintiff files this Complaint in accordance with the Court's order [Case No. 17-BK-4780-LTS, ECF No. 3013] scheduling the litigation of certain "gating issues" in PREPA's Title III case.  The Complaint is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of Plaintiff or the rights of any other party in interest in the Title III Cases to object to the Master PREPA Bond Claim or any other claims on any ground whatsoever. Plaintiff expressly reserves all further substantive or procedural objections, including, without limitation, objections as to allowability or valuation under 11 U.S.C. § 502. Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against PREPA; (b) a waiver of the rights of Plaintiff or any other party in interest in the Title III Cases to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the rights of Plaintiff or any other party in interest in the Title III Cases under PROMESA, the Bankruptcy Code or any other applicable law.

[7]   PREPA's original name was Puerto Rico Water Resources Authority, and it was changed to PREPA in 1979.

owns all transmission and distribution facilities and most of the generating facilities that constitute Puerto Rico's electric power system.

10. Plaintiff the Oversight Board is an entity established pursuant to PROMESA that serves as PREPA's sole representative in its Title III case, pursuant to PROMESA section 315(b).

11. Defendant U.S. Bank National Association is a national banking association duly incorporated and existing under the laws of the United States of America and having its principal office in New York. Pursuant to the Trust Agreement, U.S. Bank serves as successor Trustee with respect to the PREPA Bonds. As Trustee, U.S. Bank performs the functions of collateral agent, authenticates PREPA Bonds (*see* Article II), selects PREPA Bonds for redemption (*see* Article III), pays PREPA Bondholders from the Sinking Fund (*see* Article V), invests Revenues deposited to the credit of the Sinking Fund (*see* Article VI), and serves as the legal representative of all PREPA Bondholders with respect to the subject matter of this proceeding, among other things. On May 21, 2018, Defendant filed a master proof of claim on account of the PREPA Bonds, which was logged by Prime Clerk LLC, now d/b/a/ Kroll Restructuring Administration ("Kroll") as Proof of Claim No. 18449 (the "Master PREPA Bond Claim").

## JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction over this adversary proceeding pursuant to PROMESA sections 306(a) and (b), because it arises under PROMESA Title III, in a Title III case, relates to PREPA's underlying PROMESA Title III case, and/or involves disputes over property of PREPA.

13. The Court has personal jurisdiction over the Trustee and Plaintiff pursuant to PROMESA section 306(c).

14.     Venue is proper under PROMESA section 307, because this adversary proceeding is brought in a PROMESA Title III case.

15.     This adversary proceeding is brought pursuant to (a) Rules 3007, 7001(1), (2), and (9) of the Federal Rules of Bankruptcy Procedure, made applicable by PROMESA section 310, and (b) sections 502(a), 506, 544(a), 550, 551, 902 and 927 of the Bankruptcy Code,[8] made applicable to this adversary proceeding by PROMESA section 301(a).

## FACTS

### I.      Limited Extent of Trustee's Security Interest in PREPA's Property

16.     Pursuant to the Authority Act, PREPA is authorized, subject to limitations, to issue bonds to fund capital projects and grant investors in those bonds a security interest in its "contracts, revenues, and income only."  22 L.P.R.A § 196(o).

17.     Between the years 1974 and 2016, PREPA issued the PREPA Bonds pursuant to the Trust Agreement.

18.     The Trust Agreement is the governing instrument for the PREPA Bonds, and contains detailed provisions governing (i) the issuance and redemption of PREPA Bonds, (ii) collateral, (iii) the use of PREPA Bond proceeds, (iv) the receipt of revenues by PREPA, and (v) the application of those revenues, including for debt service.

19.     The Trust Agreement provides how the PREPA Bonds are secured by certain net revenues of PREPA.  The recitals of the Trust Agreement provide in relevant part:

> . . . in order to secure the payment of all the bonds at any time issued and outstanding hereunder and the interest and the redemption premium, if any, thereon according to their tenor, purport, and effect, and in order the secure the performance and observance of all the covenants, agreements and conditions therein and herein contained, the Authority . . . has pledged and does hereby pledge to the Trustee the revenues of the System . . . and other moneys *to the extent provided in this*

---

[8]   11 U.S.C. §§ 101 *et seq.*

*Agreement* as security for the payment of the bonds and the interest and redemption premium, if any, thereon and as security for the satisfaction of any other obligation assumed by it in connection with such bonds . . . ."

Trust Agreement, final recital (emphasis supplied).

20.     Section 701 of the Trust Agreement provides, in relevant part:

[P]rincipal, interest and premium [of the PREPA Bonds] *will be payable solely from the Revenues* and *said Revenues are hereby pledged to the payment thereof in the manner and to the extent hereinabove particularly specified*.

Trust Agreement § 701 (emphasis supplied).  Section 701 also disclaims personal liability on the part of PREPA to pay the PREPA Bonds.  Trust Agreement § 701.

21.     The term "Revenues" is defined by the Trust Agreement as follows:

*The word "Revenues" shall mean all moneys received by the Authority [i.e. PREPA] in connection with or as a result of its ownership or operation of the System*, including the income derived by the Authority from the sale of electricity generated or distributed by the System, any proceeds of use and occupancy insurance on the System or any part thereof and income from investments made under the provisions of the 1947 Indenture and this Agreement, except income from the investment of moneys in the 1947 Construction Fund, the Construction Fund, the Capital Improvement Fund, the Subordinate Obligations Fund to the extent such income has been derived from the investment of moneys in such Fund to be used to pay Subordinate Obligations incurred to pay the cost of any work or properties which have not been included by the Authority as part of the System as provided in Section 516 hereof and the Reserve Maintenance Fund which shall be deemed to be a part of said Funds, respectively.

*Id.* § 101 (at 24–25) (emphasis supplied).

22.     "Revenues" is thus defined to mean "all moneys *received* by [PREPA] in connection with or as a result of its ownership or operation of the System."  It does not include receivables, such as rights to payment, whether or not earned by prior performance.

23.     The flow of Revenues into various accounts maintained by PREPA and the manner and extent to which Revenues are applied to the payment of the PREPA Bonds is set forth in Article V of the Trust Agreement, entitled "Revenues and Funds."  Section 503 provides that, upon receipt, all Revenues are to be deposited to the credit of the General Fund:

The Authority covenants that … *all Revenues*, other than income from investments made under the provisions of this Agreement, will be deposited as received *in the name of the Authority* with a qualified depositary or depositaries *to the credit of the General Fund* and *applied in accordance with the provisions of this Article*.

*Id.* at § 503 (emphasis supplied).  Section 503 does not include any grant of a security interest in the General Fund or Revenues deposited to the credit of the General Fund.

24.     Section 505 provides for the application of funds in the General Fund:

*The Authority covenants that moneys in the General Fund will be used first for the payment of the Current Expenses of the System,* that such expenses will not exceed an amount which is reasonable and necessary for maintaining, repairing and operating the System in an efficient and economical manner, and that the total amount of Current Expenses in any fiscal year will not exceed the amount provided therefor in the Annual Budget for such fiscal year or any amendment thereof or supplement thereto unless such expenses shall be required by conditions beyond the control of the Authority happening during such fiscal year and which could not reasonably have been contemplated at the time of the adoption of the Annual Budget.

*Id.* § 505 (emphasis supplied).

25.     Section 505 does not include any grant of a security interest in the General Fund or Revenues deposited to the credit of the General Fund.

26.     Section 506 provides that after Current Expenses are paid, PREPA may reserve an aggregate amount of two months' worth of Current Expenses before payment of debt service, to be used for future Current Expenses (the "Reserve Amount").  The remaining Revenues are then transferred from the General Fund to the "Revenue Fund":

[T]he Treasurer shall transfer, on or before the 15th day of each month, from the General Fund to the credit of the Revenue Fund an amount equal to the amount of all moneys held for the credit of the General Fund on the last day of the preceding month less such amount to be held as reserve for Current Expenses as the Treasurer may determine but not more than one-sixth (1/6) of the amount shown by the Annual Budget to be necessary for Current Expenses for the current fiscal year . . . .

*Id.* § 506.

9

27.     Section 506 does not include a grant of a security interest in the Revenue Fund or Revenues deposited to the credit of the Revenue Fund.

28.     Section 507 provides that excess Revenues deposited to the credit of the Revenue Fund are to be withdrawn and deposited into the Sinking Fund on a monthly basis.  Section 507 specifies that each month "it shall be the duty of the Treasurer to withdraw from the Revenue Fund, all of the moneys then held to the credit of such Fund and deposit the moneys so withdrawn" to the credit of one of the three constituent accounts that make up the Sinking Fund: (a) the Bond Service Account, (b) the Redemption Account, and (c) the Reserve Account.  Trust Agreement § 507.

29.     Section 507 further provides that to the extent any Revenues are left over in the Revenue Fund after amounts are transferred to the Sinking Fund, such Revenues are transferred to the credit of a series of subordinate accounts: first to the Reserve Maintenance Fund (§ 507(d)), then to a Subordinate Obligations Fund (§ 507(e)), next to a Self-Insurance Fund (§ 507(g)); and, finally, to a Capital Improvement Fund (§ 507(h)) (the Reserve Maintenance Fund, Self-Insurance Fund, and Capital Improvement Fund, along with the deposit accounts comprising the "Construction Fund" in which bond proceeds are required to be deposited pending their use,[9] are hereinafter collectively referred to as the "Subordinate Funds").[10]

30.     Section 507 contains the Trust Agreement's *only* provision completing the grant of the security interest referred to in section 701 of the Trust Agreement by specifying the "manner" and "extent" of the security interest granted to the Trustee in favor of the PREPA Bondholders:

[9]   Section 401 of the Trust Agreement grants a security interest to the Trustee in bond proceeds deposited to the credit of deposit accounts which comprise the "Construction Fund," pending their use to fund capital improvements.  Trust Agreement § 401.

[10]   The Subordinate Obligations Fund is not included as a "Subordinate Fund" because any moneys deposited to the credit of the Subordinate Obligations Fund are only subject to a security interest in favor of holders of subordinate obligations that are not relevant here and which, on information and belief, has not been perfected.

10

The moneys in the Sinking Fund shall be held by the Trustee in trust, and the
moneys in the Reserve Maintenance Fund, the Self-insurance Fund and the Capital
Improvement Fund shall be held by the Authority in trust, separate and apart from
all other funds of the Authority, and shall be applied as hereinafter provided with
respect to such Funds and, pending such application, *shall be subject to a lien and
charge in favor of the holders of the bonds issued and outstanding* under this
Agreement and for the further security of such holders until paid out or transferred
as herein provided.

*Id.* § 507 (emphasis supplied).  Section 507 provides the security interest held by the Trustee in

"Revenues" extends only to the Sinking Fund and Subordinate Funds.

31.     Under the Trust Agreement, PREPA granted the Trustee, for the benefit of PREPA

Bondholders, a security interest only in moneys actually (i) received by PREPA *and* (ii) deposited

with the Trustee into one of the deposit accounts that make up the Sinking Fund and the

Subordinate Funds.  The Trust Agreement does not grant any security interest in any other

Revenues or accounts of PREPA, including, without limitation, the General Fund or the Revenue

Fund or any Revenues deposited to the credit thereof.

32.     The Trust Agreement sections 507–512 provide that the PREPA Bonds are payable

solely from Revenues deposited into the Sinking Fund and Subordinate Funds.  Section 507 grants

a security interest in the Sinking Fund.  Sections 508–512 of the Trust Agreement specify how the

Revenues deposited to the credit of the Sinking Fund and Subordinate Funds are to be applied,

sections 509–511 detail how the various accounts of the Sinking Fund are to be used to pay PREPA

Bondholders, and section 512 provides the Revenues deposited to the credit of the Reserve

Maintenance Fund are to be used for "unusual or extraordinary maintenance or repairs" unless

needed to make bond service or principal payments due to an insufficiency in the Bond Service

Account or Reserve Account.

33.     Under the Trust Agreement, Bondholders are not permitted to collect any money

judgments against PREPA from any moneys other than those deposited to the credit of the Sinking

Fund and Subordinate Funds.  Specifically, section 804 provides that, on an event of default, Defendant is permitted "to collect (*but solely from moneys in the Sinking Fund and any other moneys available for such purpose*) in any manner provided by law, the moneys adjudged or decreed to be payable" from PREPA.  Trust Agreement § 804.  The Trust Agreement provides that an "event of default" occurs if, among other things, principal or interest on the PREPA Bonds is not paid when it becomes due and payable or PREPA defaults on any of its covenants.  Trust Agreement § 802(a), (h).  Section 805 of the Trust Agreement contains provisions governing how the moneys deposited in the Sinking Fund should be apportioned if "the moneys in the Sinking Fund shall not be sufficient to pay the interest on or the principal of the bonds . . . ."  Trust Agreement § 805.

34.    Article V of the Trust Agreement sets forth the "manner and . . . extent"  of the security interest granted to the Trustee and how the Revenues subject to the security interest are applied to payment of the PREPA Bonds: <u>first</u>, all funds are deposited to the credit of the General Fund; <u>second</u>, once Current Expenses are paid, the remaining Revenues are transferred to the Revenue Fund (minus the Reserve Amount to pay for future Current Expenses); <u>third</u>, the remaining Revenues are transferred to the Sinking Fund for the payment of bonds; and <u>fourth</u>, if any Revenues remain in the Revenue Fund, they are transferred to the Subordinate Funds in accordance with Article V of the Trust Agreement.

35.    Other documents referenced in the Trust Agreement corroborate that PREPA Bondholders' security interests are granted only in moneys deposited into the Sinking Fund after payment of Current Expenses.  For example, the Trust Agreement provides that an "Opinion of Counsel" shall be issued (*see, e.g.*, §§ 208(e), 209(d); 210(d)), with such written opinion stating that the Trust Agreement "creates a legally valid and effective pledge of the *Net Revenues* . . . ."

Trust Agreement § 101 (definition of "Opinion of Counsel") (emphasis supplied).  Consistent with

that definition, the legal opinion from PREPA's counsel Sidley Austin LLP, appended to the

August 15, 2013 Official Statement for the 2013A bond issuance, states the PREPA Bonds are

"payable solely from the Sinking Fund" and the Sinking Fund "is pledged to and charged with the

payment of the principal of and interest on such bonds . . . ."  PREPA, Power Revenue Bond

Official Statement for Series 2013A (Aug. 15, 2013) App'x IV ¶ 6, attached hereto as **Exhibit B**.

36.     That only the moneys deposited to the credit of the Sinking Fund and Subordinate

Funds are encumbered for payment of the PREPA Bonds, and that the PREPA Bonds are non-

recourse except as to moneys deposited to the credit of the Sinking Fund, is further confirmed by

the "form" of the PREPA Bonds ("Template Bond") included as part of the Trust Agreement.  The

second paragraph of the Template Bond states "this bond shall be payable as to both principal and

interest solely from the special fund provided therefor as hereinafter set forth."  Trust Agreement

at 4.  The Template Bond goes on to refer to the provisions in the Trust Agreement specifying the

"fund charged with and pledged to the payment of the interest on and the principal of the

bonds."  *Id.* at 5.  And the Template Bond further identifies and defines the Sinking Fund, "which

special fund is pledged to and charged with the payment of and the interest on the bonds."  *Id.* at

6.  The bonds issued by PREPA incorporate the same terms as the Template Bond in the Trust

Agreement.  *See* **Exhibit D**.

## II.     PREPA Bonds' Covenants and Receivership Remedy

37.     The Authority Act imposes limitations on PREPA's ability to contract with, and

grant security interests to or for the benefit of, holders of the PREPA Bonds.

38.     The Authority Act provides PREPA may issue bonds with certain provisions that

"shall be a part of the contract with the holders of the bonds . . . ."  22 L.P.R.A. § 206(e).  Such

contractual provisions may include terms fixing "the rates to be charged for water and electric energy," and the "manner of collecting the rates." *Id.* 22 L.P.R.A. §§ 206(e)(2), (13).

39.    The Authority Act gives PREPA the power "to determine, fix, alter, charge, and collect reasonable rates . . . ." 22 L.P.R.A. § 196(l).

40.    The Authority Act grants PREPA authority to "pledge" *only* the "contracts, revenues and income" of the system.  22 L.P.R.A. § 206(e)(1); *see also* 22 L.P.R.A. § 196(o).

41.    Pursuant to the Authority Act, the Trust Agreement includes various covenants of PREPA relating to PREPA's operations.  Each covenant imposes an obligation on PREPA to take or perform certain actions under certain circumstances. Section 501 includes a covenant that PREPA will continue to render bills for the services furnished by the electric system:

> The Authority covenants that it will continue to render bills for the services and facilities furnished by the System on a monthly or bi-monthly basis until such time as the Authority shall deem it advisable to change the period covered by such bills, and that it will establish and enforce reasonable regulations in relation to the collection of such bills.

Trust Agreement § 501 (the "Collection Covenant").

42.    Section 502 includes a covenant that PREPA will "at all times fix, charge and collect reasonable rates and charges for the use of the services and facilities furnished by the System" and that the rates will "at all times be sufficient" to pay both Current Expenses and "(120%) of the aggregate Principal and Interest Requirements for the next fiscal year" on account of all the bonds then outstanding. *Id.* § 502 (the "Rate Covenant").

43.    If PREPA defaults in performing its obligations under the Trust Agreement, section 17(a) of the Authority Act provides the Trustee or holders of at least 25% of the outstanding principal with a right to seek the appointment of a receiver.  22 L.P.R.A. § 207(a) (the "Receiver

14

Remedy"). Section 804 of the Trust Agreement contains contractual limitations on Bondholder rights to seek the appointment of a receiver. Trust Agreement § 804.

44.     Each of the foregoing covenants and remedies (the "Covenants and Remedies") constitutes an obligation or liability of PREPA, or a right of the Trustee and/or holders of the PREPA Bonds against PREPA. The Covenants and Remedies are neither rights nor property of PREPA and, thus, PREPA could not have granted a security interest in them. The Authority Act does not grant PREPA authority to grant security interests in any of the covenants or remedies even if they could be subject to a security interest (which they cannot). The Trust Agreement does not grant security interests in any of the covenants or remedies under the Trust Agreement or otherwise.

**III.     Article 9 and the Failure to Perfect Security Interests Except in the Sinking Fund**

45.     PROMESA and the law of the Commonwealth governs the Trust Agreement. Trust Agreement § 1301; PROMESA.

46.     The Commonwealth has adopted Article 9 of the Uniform Commercial Code (the "UCC"), which governs the creation, perfection and priority of security interests.

47.     The Commonwealth adopted revised Article 9 of the UCC, effective January 17, 2013 (hereinafter, revised Article 9 is referred to as "Article 9").

48.     Article 9 governs the existence, validity and perfection of security interests in PREPA's property. *See* 19 L.P.R.A. § 2251.

49.     Under Article 9, a security interest can attach only to "collateral" described in a security agreement and in which "the debtor has rights in . . . or the power to transfer rights in . . . ." 19 L.P.R.A. § 2233(b)(2). As alleged above, no security agreement describes any collateral other than the Sinking Fund and Subordinate Funds. *See* 19 L.P.R.A. §§ 2218, 2233(b)(3)(A). A security interest can be "perfected" only in collateral in which a security interest has attached.

15

50.     "Collateral" means "*property* subject to a security interest." 19 L.P.R.A. § 2212(a)(12) (emphasis supplied).

51.     Under Article 9, the rights of a "lien creditor" have priority over unperfected security interests.  19 L.P.R.A. § 2267(a)(2).

52.     Under Article 9, "lien creditor" means, among other things, "a trustee in bankruptcy from the date of the filing of the petition."  19 L.P.R.A. § 2212(a)(52).

53.     Under Article 9, a financing statement must be filed to perfect certain security interests.  19 L.P.R.A. § 2260(a), (b).

54.     Under Article 9, a "financing statement is sufficient only if it . . . indicates the collateral covered by the financing statement."  19 L.P.R.A. § 2322(a).

55.     Under Article 9, the General Fund, the Revenue Fund, the Subordinate Funds, and the Sinking Fund are comprised of "deposit accounts."  19 L.P.R.A. § 2212(a)(29).

56.     Under Article 9, subject to one exception for "proceeds" not applicable here,[11] the *only* way to perfect a security interest in funds credited to a deposit account is by "control" of the deposit account.   19 L.P.R.A. § 2262(b)(1) ("a security interest in a deposit account may be perfected *only* by control" (emphasis supplied)); *see also* 19 L.P.R.A. § 2264(a) ("A security interest in . . . deposit accounts . . . may be perfected by control of the collateral under § 2214 . . . .").

---

[11] There is an exception to the "control" requirement of 19 L.P.R.A. § 2262(b)(1) if the secured party has a perfected security interest in collateral and the deposit account contains identifiable "proceeds" of that collateral.  *See* 19 L.P.R.A. § 2265(c) and (d).  Here, the Trust Agreement provides that the holders of bonds obtain a security interest only in Revenues both (i) received by PREPA and (ii) deposited to the credit of the Sinking Fund.  The Trustee does not have a perfected security interest in any of PREPA's property other than the Sinking Fund.  Moreover, because the moneys in which the Trustee asserts a security interest are not proceeds of any other property of PREPA in which the Trustee has a perfected security interest, 19 L.P.R.A. § 2265(c) does not avail them.

57.     Under Article 9, a secured party has "control" of a deposit account only if (a) the
secured party is the bank with which the deposit account is maintained, (b) the secured party is the
customer of the bank (and the holder of the deposit account), or (c) the debtor, the secured party
and the bank have executed a DACA that gives the secured party requisite "control" of the deposit
account (by providing that the bank will comply with instructions originated by the secured party
directing disposition of the funds in the deposit account without further consent by the debtor).
*See* 19 L.P.R.A. § 2214(a)(1)–(3).

### 1.     The Financing Statements

58.     Four financing statements were filed in connection with the PREPA Bonds.

59.     <u>First</u>, on August 21, 2013, the Trustee filed a financing statement that names as the
secured party "US Bank National Association, on behalf of the bondholders of Power Revenue
Bonds, Series 2013A."  *See* Dep't of State Doc. No. 2013004449 ("<u>FS 4449</u>").  FS 4449 describes
the Trustee's collateral, in material part, as "the Revenues of the System (as each such term is
defined in the Agreement) and other moneys to the extent provided in the Agreement."  *Id.*  While
FS 4449 states the terms "Revenue" and "System" will have the meanings given in the Trust
Agreement, the Trust Agreement is not attached to FS 4449.[12]

60.     <u>Second</u>, on August 12, 2014, the Trustee filed a financing statement that names as
the secured party "U.S. Bank National Association, as Trustee and successor Trustee for all holders
of bonds issued and to be issued under Trust Agreement dated January 1, 1974."  *See* Dep't of
State Doc. No. 2014004304 ("<u>FS 4304</u>").  FS 4304 describes the Trustee's collateral, in material

---

[12] Two financing statement amendments were filed by the Trustee in connection with FS 4449.  Both were filed on
August 12, 2014.  The first amendment altered the secured party's name from "US Bank National Association, on
behalf of the bondholders of Power Revenue Bonds, Series 2013A" to "US Bank National Association, as Trustee and
successor Trustee for all holders of bonds issued and to be issued under Trust Agreement dated as of January 1, 1974,
as amended."  The second amendment added a note stating that "[f]or the avoidance of doubt, this financing statement
covers a Transmitting Utility."

part, as "[a]ll the Revenues of the System (as defined in the Trust Agreement dated January 1,

1974, between the Debtor and U.S. Bank National Association, as trustee and successor trustee),

and other moneys and accounts to the extent provided in such Trust Agreement." *Id.*  FS 4304

attaches a copy of the Trust Agreement as an exhibit.

61.     <u>Third</u>, on June 30, 2015, the Trustee filed a financing statement that names as the

secured party "US Bank National Association, as Trustee and successor Trustee for all holders of

bonds issued and to be issued under Trust Agreement dated January 1, 1974." *See* Dep't of State

Doc. No. 2015004173 ("<u>FS 4173</u>").  FS 4173 describes the Trustee's collateral, in material part,

as "all of the Debtor's rights, title, and interest in and to now-owned or acquired collateral to the

extent provided under the Trust Agreement . . . in all Revenues of the System and all other moneys

granted under the Trust Agreement, including without limitation, all of such rights of the Debtor

in and to any "Funds" and any proceeds, deposit accounts, security entitlements, other investment

property, accounts, payment intangibles, 'Time Deposits,' supporting obligations, and general

intangibles of any of the foregoing and all related rights arising from or now or hereafter held in

or required to be held in [certain funds created by the Trust Agreement] and any earnings therein,

wherever the same shall be held, and any and all property of any kind from time to time pledged,

assigned, or transferred as additional security for the bonds by the Debtor or by anyone on its

behalf." *Id.*  While FS 4173's collateral description is stated to cover collateral only "to the extent

provided under the Trust Agreement" and only as far as such collateral is "granted under the Trust

Agreement," the Trust Agreement is not attached to FS 4173.

62.     <u>Fourth</u>, also on June 30, 2015, the Trustee filed a financing statement that is in all

material respects identical to FS 4173, but was filed using the Debtor's Spanish name, "Autoridad

de Energia Electrica de Puerto Rico."  *See* Dep't of State Doc. No. 2015004174 ("<u>FS 4174</u>," and

18

with FS 4449, FS 4304, and FS 4173, the "Financing Statements").[13]  FS 4174 has the same
collateral description as FS 4173.  While FS 4174's collateral description is stated to cover
collateral only "to the extent provided under the Trust Agreement" and only as far as such collateral
is "granted under the Trust Agreement," the Trust Agreement is not attached to FS 4174.

### 2. Any Security Interests in Deposit Accounts Other Than Those Held by the Trustee Are Unperfected

63.    The deposit accounts that constitute the Sinking Fund are held by the Trustee as the
depositary bank.  Trust Agreement § 507.  The deposit accounts that constitute the Self-Insurance
Fund are also held by the Trustee as the depositary bank.

64.    The Trustee has not entered into any DACAs with either PREPA and/or the
depositary bank with regard to any deposit accounts of PREPA not held by the Trustee.

65.    As a consequence, although the Trustee filed the Financing Statements listing
PREPA as debtor and the Trustee as secured party, these Financing Statements (even if otherwise
effective as a "financing statement") were ineffective to perfect any security interests in these
deposit accounts (although, to be clear, no such security interests were ever granted in any deposit
accounts other than those comprising the Sinking Fund and Subordinate Funds for the reasons set
forth herein).  Perfection of a security interest in a deposit account as original collateral requires
control by the secured party, as described above.  19 L.P.R.A. § 2262(b)(1).  The Trustee does not
have "control" of any relevant deposit accounts except those held by the Trustee, as it did not enter
into any DACA with either PREPA and/or the applicable depositary bank.  Even if the Trustee
(for the benefit of bondholders) has a security interest in the applicable deposit accounts, the

---

[13] The Financing Statements are attached hereto as **Exhibit C**.

Trustee does not have a *perfected* security interest in those deposits accounts.  19 L.P.R.A. § 2262(b)(1).

66.    Even if the Trust Agreement could be construed to grant a security interest to the Trustee in property other than Revenues deposited to the credit of the Sinking Fund and Subordinate Funds (which it cannot be), the only perfected security interest in favor of the Trustee (for the benefit of PREPA Bondholders) is in the Sinking Fund and the Self-Insurance Fund held at the Trustee.

67.    The Trustee does not have, and PREPA Bondholders are not beneficiaries of, a perfected security interest in any other deposit accounts or property of PREPA.

> **3.    There Can Be No Security Interest in the Covenants and Remedies and, Regardless, Any Security Interest in the Covenants and Remedies Is Unperfected**

68.    PREPA is the obligor under the Covenants and Remedies.  The Covenants and Remedies are not PREPA's property.

69.    As the Covenants and Remedies are not PREPA's property, they may not be subject to a security interest under Article 9.

70.    Moreover, even if the Covenants and Remedies could be subject to a security interest, the Trustee's security interest would be unperfected because none of the Financing Statements identify the Covenants and Remedies in its collateral description.

**IV.    Erroneous Assertions That the Trustee Has Security Interests in Property Other than the Sinking Fund**

71.    On January 16, 2018, the Debtors (including PREPA) filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filings Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* (the "Bar Date Motion").  Case No. 17-BK-3283-LTS, ECF No. 2255.  By order dated February 15, 2018, the Court granted the relief requested in the Bar Date

Motion and established deadlines and procedures for filing proofs of claim in the Title III Cases. *See Order (A) Establishing Deadlines and Procedures for Filings Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* (the "Initial Bar Date Order"), Case No. 17-BK-3283, ECF No. 2521. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered an order (the "Extension Order," and together with the Initial Bar Date Order, the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 p.m. (Atlantic Time). *See Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof*, Case No. 17-BK-3283, ECF No. 3160.

72. Pursuant to the Bar Date Orders, the "indenture trustees, fiscal agents, or any similar agent or nominee . . . for each respective series of bonds issued by a Debtor or non-Debtor . . . may file a master proof of claim . . . against the applicable Debtor on behalf of themselves and all holders of bond claims for the respective series of bonds . . . ." Initial Bar Date Order ¶ 5.a.

73. Pursuant to the Bar Date Orders, on May 21, 2018, the Trustee filed the Master PREPA Bond Claim on account of the PREPA Bonds, which was logged by Kroll as Proof of Claim No. 18449. The Master PREPA Bond Claim states that the total aggregate amount owed by PREPA for all PREPA Bonds as of the date PREPA filed it petition under Title III of PROMESA (July 2, 2017) was $8,477,156,729.56, consisting of principal in the aggregate amount of $8,258,614,158.00, and accrued and unpaid interest in the aggregate amount of $218,542,581.56. The Master PREPA Bond Claim asserts the PREPA Bonds are secured by all Revenues of PREPA as well as the Covenants and Remedies.

## COUNT I

JUDGMENT DISALLOWING MASTER PREPA BOND CLAIM ASSERTING
CLAIM SECURED BY SECURITY INTERESTS IN REVENUES BEYOND THOSE
DEPOSITED TO THE CREDIT OF THE SINKING FUND AND SELF-INSURANCE FUND
(11 U.S.C. § 502)

74.     Plaintiff repeats and incorporates by reference each allegation contained in paragraphs 1–73, as if fully set forth herein.

75.     The Master PREPA Bond Claim asserts the PREPA Bonds are secured by a security interest against (i) all Revenues (which is defined by the Trust Agreement to mean all moneys received by PREPA in connection with or as a result of its ownership or operation of the System); (ii) all present and future revenues of PREPA; and (iii) certain covenants, obligations and undertakings of PREPA.  *See* Claim No. 18449.

76.     Under the Trust Agreement, PREPA granted security interests to the Trustee, for the benefit of PREPA Bondholders, *only* in Revenues actually deposited to the credit of the Sinking Fund and the Subordinate Funds.

77.     The Trustee has control only over the deposit accounts held by the Trustee, which comprise the Sinking Fund and Self-Insurance Fund.  The Trustee failed to perfect a security interest in any other deposit accounts.

78.     The Trustee was not granted a security interest in any PREPA property other than the Revenues deposited from time to time to the credit of the Sinking Fund and the Subordinate Funds.

79.     Plaintiff is entitled to a judgment disallowing the Master PREPA Bond Claim to the extent it asserts the PREPA Bonds are secured by a security interest against PREPA's property other than Revenues actually on deposit to the credit of the Sinking Fund and Self-Insurance Fund.

## COUNT II

JUDGMENT DISALLOWING MASTER PREPA BOND CLAIM
ASSERTING CLAIM SECURED BY SECURITY INTERESTS IN
MONEYS RECEIVED BY PREPA IN CONNECTION WITH OR AS A RESULT OF
ITS OWNERSHIP OR OPERATION OF THE SYSTEM OTHER THAN THE REVENUES
DEPOSITED TO THE CREDIT OF THE SINKING FUND AND SELF-INSURANCE FUND
AND AVOIDING AND PRESERVING FOR THE BENEFIT OF PREPA ANY SUCH
SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 544 AND 551
(19 L.P.R.A. §§ 2212(a)(52), 2267(a)(2); 11 U.S.C. §§ 502, 544(a), 551; 48 U.S.C. § 2161)

80.    Plaintiff repeats and incorporates by reference each allegation contained in Paragraphs 1–73, as if fully set forth herein.

81.    The Trustee has not met the requirements under Article 9 for perfecting a security interest in property of PREPA other than funds deposited to the credit of the Sinking Fund and Self-Insurance Fund.

82.    The Master PREPA Bond Claim asserts perfected security interests in all funds received by PREPA in connection with or as a result of its ownership or operation of the System. The Trustee does not have control over any deposit accounts, except for the Sinking Fund and Self-Insurance Fund, or any Revenues held by PREPA, except for those Revenues deposited to the credit of the Sinking Fund and Self-Insurance Fund.

83.    Plaintiff is entitled to a judgment: (a) disallowing, pursuant to Bankruptcy Code section 502(a), the Master PREPA Bond Claim to the extent it asserts a secured claim secured by perfected security interests in any of PREPA's property beyond Revenues deposited to the credit of the Sinking Fund and Self-Insurance Fund in accordance with the Trust Agreement, and (b) (i) avoiding any and all such security interests (if any) in Revenues not deposited to the credit of the Sinking Fund and Self-Insurance Fund because such security interests are invalid and unenforceable against PREPA pursuant to Bankruptcy Code section 544(a) and 19 L.P.R.A. § 2267(a), (ii) recovering such interests for PREPA pursuant to Bankruptcy Code section 550, and/or

23

(iii) automatically preserving them for the benefit of PREPA pursuant to Bankruptcy Code section 551.

### COUNT III

JUDGMENT DISALLOWING THE
MASTER PREPA BOND CLAIM TO THE EXTENT IT ASSERTS PRIORITY,
PERFECTED SECURITY INTERESTS AGAINST MONEYS RECEIVED BY PREPA IN
CONNECTION WITH OR AS A RESULT OF ITS OWNERSHIP OR OPERATION
OF THE SYSTEM OTHER THAN THE REVENUES DEPOSITED TO THE CREDIT
OF THE SINKING FUND AND SELF-INSURANCE FUND AND SUBORDINATING
THE TRUSTEE'S SECURITY INTEREST TO PREPA'S INTEREST IN SUCH PROPERTY
(48 U.S.C. § 2161; 19 L.P.R.A. §§ 2260, 2267, 2322)

84.     Plaintiff repeats and incorporates by reference each allegation contained in Paragraphs 1–73, as if fully set forth herein.

85.     The Master PREPA Bond Claim asserts the PREPA Bonds are secured by a priority, perfected security interest in funds received by PREPA in connection with or as a result of its ownership or operation of the System, including against amounts not deposited to the credit of the Sinking Fund or Self-Insurance Fund.

86.     Any security interest in funds received by PREPA that are not deposited to the credit of the Sinking Fund or Self-Insurance Fund is unperfected.

87.     Pursuant to Article 9, PREPA's interest in any Revenues not deposited to the credit of the Sinking Fund or Self-Insurance Fund is entitled to priority over any unperfected security interest of the Trustee against such property.

88.     Plaintiff is entitled to judgment disallowing the Master PREPA Bond Claim asserting the Trustee has priority, perfected security interests against moneys received by PREPA in connection with or as a result of its ownership or operation of the System other than the Revenues deposited to the credit of the Sinking Fund and Self-Insurance Fund and otherwise

subordinating the security interest of the Trustee against such property to PREPA's interest in such property pursuant to 19 L.P.R.A § 2267(a)(2).

## COUNT IV

JUDGMENT DISALLOWING THE
MASTER PREPA BOND CLAIM ASSERTING SECURITY INTERESTS IN THE
COVENANTS AND REMEDIES, WHICH ARE NOT PREPA'S PROPERTY
THUS NOT COLLATERAL CAPABLE OF BEING PLEDGED BY PREPA
(11 U.S.C. §§ 502, 506; 19 L.P.R.A. § 2233(b)(2); 22 L.P.R.A. § 196(o))

89.     Plaintiff repeats and incorporates by reference each allegation contained in Paragraphs 1–73, as if fully set forth herein.

90.     The Master PREPA Bond Claim asserts security interests in the Covenants and Remedies (including the Rate Covenant, Collection Covenant, and Receiver Remedy).  *See* Master PREPA Bond Claim, Ex. A ¶ 6 (stating "[p]ayment of the Claim . . . [is] secured by . . . certain covenants, obligations and undertakings").

91.     The Covenants and Remedies are not PREPA's property.

92.     The Covenants and Remedies are not subject to a security interest granted by PREPA.  *See* 19 L.P.R.A. § 2233(b)(2); *see also* 19 L.P.R.A. § 2212(a)(12); *see also* 11 U.S.C. § 506(a) (to be allowed, secured claim must constitute a "lien *on property*") (emphasis added).

93.     PREPA lacks and has always lacked authority to grant a security interest in the Covenants and Remedies.  *See* 22 L.P.R.A. § 206(e)(1); *see also* 22 L.P.R.A. § 196(o).

94.     Plaintiff is entitled to a judgment pursuant to Bankruptcy Code § 502(a) disallowing the Master PREPA Bond Claim to the extent it asserts a security interest in the Covenants and Remedies (including the Rate Covenant, Collection Covenant, and Receiver Remedy).

## COUNT V

JUDGMENT DISALLOWING MASTER PREPA BOND CLAIM ASSERTING
SECURITY INTERESTS AGAINST THE COVENANTS AND REMEDIES
AND AVOIDING AND PRESERVING FOR THE BENEFIT OF PREPA ANY SUCH
SECURITY INTERESTS PURSUANT TO BANKRUPTCY CODE SECTION 544 AND 551
(19 L.P.R.A. §§ 2212(a)(52), 2267(a)(2); 11 U.S.C. §§ 502, 544(a), 551; 48 U.S.C. §2161)

95.     Plaintiff repeats and incorporates by reference each allegation contained in
Paragraphs 1–73, as if fully set forth herein.

96.     The Master PREPA Bond Claim asserts security interests in the Covenants and
Remedies (including the Rate Covenant, Collection Covenant, and Receiver Remedy).

97.     Any security interest in the Covenants and Remedies is unperfected.  None of the
Financing Statements identify the Covenants and Remedies as collateral.

98.     None of the Financing Statements is sufficient to perfect any security interest in the
Covenants and Remedies.

99.     Plaintiff is entitled to a judgment (a) disallowing, pursuant to Bankruptcy Code
section 502(a), the Master PREPA Bond Claim to the extent it asserts perfected security interests
in the Covenants and Remedies and (b) (i) avoiding any and all such security interests in such
purported collateral because they are invalid and unenforceable against PREPA pursuant to
Bankruptcy Code section 544(a) and 19 L.P.R.A. § 2267(a), (ii) recovering such interests, to the
extent they exist, for PREPA pursuant to Bankruptcy Code section 550, and/or (iii) automatically
preserving them, to the extent they exist, for the benefit of PREPA pursuant to Bankruptcy Code
section 551.

## COUNT VI

JUDGMENT DISALLOWING THE MASTER PREPA BOND CLAIM
TO THE EXTENT IT ASSERTS PRIORITY, PERFECTED SECURITY
INTERESTS AGAINST THE COVENANTS AND REMEDIES AND SUBORDINATING
THE TRUSTEE'S SECURITY INTEREST TO PREPA'S INTEREST IN SUCH PROPERTY
(48 U.S.C. § 2161; 19 L.P.R.A. §§ 2260, 2267, 2322)

100.    Plaintiff repeats and incorporates by reference each allegation contained in Paragraphs 1–73, as if fully set forth herein.

101.    The Master PREPA Bond Claim asserts the PREPA Bonds are secured by a priority, perfected security interest against the Covenants and Remedies.

102.    There are no perfected security interests against the Covenants and Remedies.

103.    If and to the extent that the Covenants and Remedies are property of PREPA, and PREPA has granted a security interest in them, PREPA's rights in the Covenants and Remedies has priority over any unperfected security interest of the Trustee in the Covenants and Remedies.

104.    Plaintiff is entitled to judgment disallowing the Master PREPA Bond Claim asserting the Trustee has priority, perfected security interest against the Covenants and Remedies, and otherwise subordinating the security interest of the Trustee against such Covenants and Remedies to PREPA's interest in the Covenants and Remedies pursuant to 19 L.P.R.A. § 2267(a)(2).

## COUNT VII

JUDGMENT DISALLOWING
THE MASTER PREPA BOND CLAIM PURSUANT TO BANKRUPTCY
CODE § 927 TO THE EXTENT IT CLAIMS A RIGHT TO PAYMENT BEYOND MONEYS
CREDITED TO THE DEPOSIT OF THE SINKING FUND AND SELF-INSURANCE FUND
(11 U.S.C. §§ 502, 506, 927)

105.    Plaintiff repeats and incorporates by reference each allegation contained in Paragraphs 1–73, as if fully set forth herein.

27

106.    Pursuant to Bankruptcy Code section 101(5), made applicable by PROMESA section 301(a), the Trustee can only have a claim against PREPA or its property to the extent it has rights to payment from PREPA or its property.  The bonds and the Trust Agreement grant the Trustee a right to payment solely from the Sinking Fund (and the Subordinate Funds).  The Trustee has no allowable claim against PREPA and its property, except for its secured claim against the Sinking Fund (and the Self-Insurance Fund).

107.    The Trustee has asserted the Master PREPA Bond Claim is payable from, and secured by, special revenues.  *See Preliminary Statement and Reservation of Rights of U.S. Bank National Association as PREPA Bond Trustee With Respect to 9010 Motion of Government Parties Relating to PREPA Restructuring Support Agreement*, Case No. 17-BK-4780, ECF No. 1696 ¶ 2. The Trustee has no secured claim payable from any asset other than the Sinking Fund and Self-Insurance Fund.

108.    The only promises to pay in respect of the bonds are in the bonds themselves and provide PREPA "promises to pay, solely from the special fund provided therefor as hereinafter set forth . . . the Principal Amount set forth above . . . and to pay, solely from said special fund . . . interest on said Principal Amount . . . ."  Trust Agreement § 101; Ex. D.

109.    Section 701 of the Trust Agreement contains a covenant to pay principal and interest "in the manner specified herein and in said bonds and in the coupons, if any, appertaining thereto," thereby incorporating the foregoing limitations on payment to payment from the Sinking Fund and Subordinate Funds.  The Trust Agreement provides the PREPA Bonds are solely payable from Revenues actually deposited to the credit of the Sinking Fund and the Subordinate Funds. *See* Trust Agreement §§ 507–512, 701.

110.     If PREPA has defaulted on its obligations under the Trust Agreement, the Trust Agreement provides any obligation to pay money to bondholders can be collected solely from the Sinking Fund and Subordinate Funds.  Trust Agreement § 804.  If the moneys in the Sinking Fund and Subordinate Funds are insufficient to pay bondholders in full, the Trust Agreement provides the funds credited to the Sinking Fund and Subordinate Fund shall be apportioned *pro rata* among the Bondholders.  Trust Agreement § 805.  The Trust Agreement does not provide for the payment to Bondholders of any amounts not previously deposited in the Sinking Fund or Subordinate Funds.

111.     The Trust Agreement and bonds restrict the Bondholder's right to payment, including its right to payment on default, to a right to payment from the Sinking Fund and Subordinate Funds.

112.     The PREPA Bonds are not payable from any PREPA property other than the Sinking Fund and Subordinate Funds.   The Master PREPA Bond Claim is not allowable against PREPA or any of its property except the Sinking Fund and Self-Insurance Fund.

113.     The Trust Agreement provides the PREPA Bonds are "payable solely" from the "special revenues" actually deposited into the Sinking Fund (and the Subordinate Funds).   The PREPA Bonds have no recourse against any other property of PREPA and Bankruptcy Code section 927 provides Bankruptcy Code section 1111(b) does not grant them recourse.

114.     Plaintiff is entitled to a judgment (a) disallowing the Master PREPA Bond Claim to the extent it asserts a right to payment other than a secured claim against Revenues actually deposited to the credit of the Sinking Fund and Self-Insurance Fund, and (b) disallowing any unsecured deficiency claim against PREPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays that judgment be entered for it and against Defendant as follows:

A.      Disallowing the Master PREPA Bond Claim to the extent it asserts a secured claim secured by a security interest in PREPA's property other than Revenues actually deposited to the credit of the Sinking Fund and Self-Insurance Fund;

B.      Disallowing, pursuant to Bankruptcy Code section 502(a), the Master PREPA Bond Claim to the extent it asserts perfected security interests in Revenues beyond those actually deposited to the credit of the Sinking Fund or Self-Insurance Fund in accordance with the Trust Agreement, avoiding any and all such security interests because they are invalid and unenforceable against PREPA pursuant to Bankruptcy Code section 544(a) and 19 L.P.R.A. § 2267(a), recovering such interests for PREPA pursuant to Bankruptcy Code section 550, and/or automatically preserving them for the benefit of PREPA pursuant to Bankruptcy Code section 551;

C.      Disallowing, pursuant to 19 L.P.R.A. § 2267(a)(2), the Master PREPA Bond Claim asserting the Trustee has a priority, perfected security interest against any Revenues other than the Revenues actually deposited to the credit of the Sinking Fund or Self-Insurance Fund and otherwise subordinating the security interest of the Trustee against such property to PREPA's interest in such property;

D.      Disallowing the Master PREPA Bond Claim to the extent it asserts a security interest in the Covenants and Remedies (including the Rate Covenant, Collection Covenant, and Receiver Remedy) because, *inter alia*, they are not PREPA's property, PREPA cannot (and did not) grant a security interest in them, and thus they do not constitute collateral subject to a security interest to secure the PREPA Bonds;

30

E.      Disallowing the Master PREPA Bond Claim to the extent it asserts perfected security interests in the Covenants and Remedies, avoiding any and all such security interests in such property because they are invalid and unenforceable against PREPA pursuant to Bankruptcy Code section 544(a) and 19 L.P.R.A. § 2267(a), recovering such interests for PREPA pursuant to Bankruptcy Code section 550, and/or automatically preserving them for the benefit of PREPA pursuant to Bankruptcy Code section 551;

F.      Disallowing, pursuant to 19 L.P.R.A. § 2267(a)(2), the Master PREPA Bond Claim asserting the Trustee has a priority, perfected security interest against the Covenants and Remedies and otherwise subordinating the security interest of the Trustee against such Covenants and Remedies to PREPA's interest in the Covenants and Remedies;

G.      Disallowing the Master PREPA Bond Claim to the extent it asserts an unsecured claim against PREPA; and

H.      Granting such other relief as is just and proper.


*[Remainder of page intentionally left blank]*

Dated:    September 30, 2022        Respectfully submitted,
             San Juan, Puerto Rico

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock
Margaret Dale
Paul V. Possinger
Ehud Barak
Daniel S. Desatnik
Elliot R. Stevens
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for PREPA*

*/s/ Luis F. del Valle-Emmanuelli*

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.647.3503
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/763-0565
Fax: (787) 763-8260

*Co-Attorneys for the Financial
Oversight and Management Board
as Representative for PREPA*